## SETTLEMENT AGREEMENT

This Settlement Agreement is made this 13th day of October, 2011 by and between Deere & Company, a corporation duly organized and existing under the laws of Delaware (hereinafter referred to as "John Deere" or "Deere") and Richland Equipment Co., Inc., a corporation with a business location in Centreville, MS ("Richland" or "Dealer").

WHEREAS, Dealer is an independent retail dealer of Agricultural, Turf, Commercial, Consumer and Lawn care equipment;

WHEREAS, John Deere is engaged in the sale and distribution of among other things, Agricultural, Turf, Commercial, Consumer and Lawn care equipment to John Deere Authorized Dealers for resale to consumers;

WHEREAS, Dealer has entered into various Dealer Agreements with John Deere, (hereinafter collectively referred to as the "Dealer Agreements");

WHEREAS, John Deere has provided notice to terminate those Dealer Agreements based on Dealer's past performance, and Dealer disputes the legality of the termination;

WHEREAS, in consideration of the mutual promises, covenants and conditions set forth herein, Deere is willing to stay exercising certain of its termination rights and remedies and will allow Dealer to remain a John Deere dealer if certain conditions are met;

NOW, THEREFORE, in consideration of the above premises and the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereby agree as follows:

1. Deere agrees to withdraw its termination of Richland immediately.

2. Richland's sales in Deere FY 2011 (November 1, 2010 – October 31, 2011) will not be relevant to any evaluation of Richland's sales performance (including any subsequent termination decisions).

3. Richland's target market-shares during its Cure Period (Deere FY 2012 through Deere FY 2014) will be:

   - FY 2012: 20% of only Small Ag sales in Richland's AOR;
   - FY 2013: 25% of only Small Ag sales in Richland's AOR.
   - FY 2014: 30% of only Small Ag sales in Richland's AOR.


EXHIBIT

Market share to be calculated using $ based market shares using Richland's current market share as set forth in Exhibit A to this agreement.

4. Deere cannot attempt to terminate Richland for any alleged market-share deficiencies during the Cure Period unless Richland fails to meet the market-share targets for two straight years.

5. Should Richland achieve a 30% Small-Ag market-share level as measured in Richland's AOR during any fiscal year 2012 to 2014, and then maintain that 30% market share level for the consecutive year, Richland will have cured the alleged default upon which this agreement is based and the Cure Period will expire.

6. Should Richland's market share based on Small Ag sales in Richland's AOR ever drop below 30% (on a Deere fiscal year basis), during any fiscal year subsequent to 2014, Richland will again become eligible for a program that will require Richland to once again achieve a target market share of Small Ag sales only in Richland's AOR. Subsequent Small Ag market-share levels shall be determined at such time they become necessary.

7. This agreement does not preclude either Deere or Richland from asserting any legal claims and/or defenses in the future related to a termination based on market share (with the exception that Deere cannot rely upon Richland's market share in FY 2011).

8. During the term of the Cure Period, Deere will assign a field-based Territory Manager that will make at least one personal visit to Richland per FY quarter.

9. During the term of the current dealership agreement, Deere shall make available to Richland the services of Deere's Sales Support Center, so long as Deere's has such a support program in place.

10. Richland agrees that during meetings and conversations with its Territory Manager and/or Sales Support Center, or any other persons from Deere related to business issues, Richland will not record (either electronically or in writing) those communications. Richland's business personnel attending any such meetings can take handwritten notes during those meetings for the purposes of executing tactics or strategies discussed at the meeting.

11. Deere agrees to make available to Richland the following for immediate stocking: two tractors on terms, two tractors on DPFS, and based upon reasonable stocking requirements, one or more hay

balers, with one of every two eligible for terms and the other to be acquired on DPFS.[1]

12. Deere agrees to treat Richland in a manner consistent with the wholegoods ordering parameters offered to other John Deere dealers holding the same contracts. This includes orders for both retail sold, DPFS, and stock categories.

13. This agreement is personal to Jack Jones, the current owner of Richland, and Jack Jones cannot transfer this agreement, even if he eventually transfers his Deere dealership agreements to another party.

14. The parties agree to keep the terms of this settlement confidential, with the exception that both parties can disclose the fact they have settled their dispute and that Deere is no longer seeking to terminate Richland.

ACKNOWLEGED AND AGREED TO this 13 day of October 2011.

RICHLAND EQUIPMENT CO., INC.

By _____

Date 10/14/11

DEERE & COMPANY

By _____

Date 10-13-2011

---

1. Deere will accept the orders immediately, and undertake all reasonable efforts to supply Richland with the equipment identified. However, Deere cannot guarantee immediate inventory as this is dependent on the models and options ordered and Deere's overall availability position of those models at the time of order.

EXHIBIT A

Confidential
Report: County Summary AOR ASSIGNMENT
Current Time Span: Sep 2010 - Aug 2011
Product Family: Dealer Performance
Dealer(s): Richland Equipment Co., Inc. - Centreville, MS (01 5326)

| State | County | large\small\under 90 % |
|---|---|---|
| LA | East Baton Rouge | 15\15\10 |
| | East Feliciana | 85\85\85 |
| | St. Helena | 60\60\30 |
| | West Feliciana | 20\20\20 |
| MS | Adams | 10\10\10 |
| | Amite | 55\55\55 |
| | Franklin | 35\35\25 |
| | Wilkinson | 100\100\100 |