IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**RICHLAND EQUIPMENT COMPANY,
INC.**                                                                                                    **PLAINTIFF**

V.                                         CIVIL ACTION NO. 5:17-CV-88-KS-MTP

**DEERE & COMPANY**                                                                      **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

For the reasons below, the Court **grants** Defendant's Motion to Compel Arbitration [10]. This case is dismissed without prejudice.

### I. BACKGROUND

This case arises from dealer agreements between Plaintiff, a retailer in tractors and other outdoor/agricultural equipment, and Defendant, a manufacturer of agricultural equipment. Plaintiff alleges that Defendant threatened to unlawfully terminate the dealer agreements, which would eventually cause the closure of its business. Accordingly, Plaintiff filed this lawsuit, asserting a wide variety of claims. Defendant filed a Motion to Compel Arbitration [10], which the Court now addresses.

### II. DISCUSSION

Defendant argues that the parties entered into a valid arbitration agreement which includes a delegation clause that transfers the Court's power to determine the scope of the arbitration agreement to the arbitrator. In response, Plaintiff argues that the contract containing the arbitration clause has been terminated by the mutual consent of the parties, and that the claims asserted in this case do not fall within the scope of the arbitration agreement.

"Enforcement of an arbitration agreement involves two analytical steps. The first is contract formation – whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs.*, 830 F.3d 199, 201 (5th Cir. 2016).

## A.  *Existence of an Arbitration Agreement*

The parties agree that they entered into an arbitration agreement. But Plaintiff argues that the contract containing the arbitration provision terminated by the parties' mutual consent. Plaintiff apparently contends that the arbitration provision is no longer binding because the parties allegedly terminated the contract containing it. But "an arbitration agreement contained in a contract does not terminate merely because the contract has terminated." *Consorcio Rive v. Briggs of Cancun, Inc.*, 82 F. App'x 359, 363 (5th Cir. 2003) (citing *Nolde Bros. v. Bakery & Confectionary Workers Union*, 430 U.S. 243 , 249-55, 51 L. Ed. 2d 300, 97 S. Ct. 1067 (1977)); *see also Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 F. App'x 462, 466 (5th Cir. 2004); *Wilson-Broadwater v. Delta Career Educ. Corp.*, No. 1:16-CV-JSO-JCG, 2016 U.S. Dist. LEXIS 162547, at *14 (S.D. Miss. Nov. 23, 2016). A dispute should still be referred to arbitration pursuant to an expired arbitration agreement if it falls within the scope of the agreement. *Tristar Fin.*, 97 F. App'x at 466.

In 2001, the parties entered into a Commercial Worksite Products Dealer Agreement (the "CWPDA"). *See* Exhibit 3 to Complaint, *Richland Equip. Co., Inc. v.*

*Deere & Co.*, No. 5:17-CV-88-KS-MTP (S.D. Miss. July 3, 2017), ECF No. 1-5. The CWPDA contained the following provision: "Dealer, Affiliates, . . . Deere & Company and it's [sic] affiliates agree that any dispute shall be finally resolved by binding arbitration pursuant to the terms set forth in Schedule 4." *Id.* at 9. Therefore, the Court finds that the parties entered into a valid and enforceable arbitration agreement.

### B. *Scope of the Arbitration Agreement*

Next, the Court must determine whether Plaintiff's claims are within the scope of the arbitration agreement. Before the Court can address this issue, it must address the threshold issue of who the parties agreed would decide questions of arbitrability. Defendant contends that the parties agreed that the arbitrator would determine the scope of the agreement, while Plaintiff contends that the Court should do so.

"Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter." *Brittania-U Nig., Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 2017 U.S. App. LEXIS 14692, at *7 (5th Cir. 2017). The Court must determine whether the arbitration agreement contains a delegation clause, "a provision in an arbitration agreement that transfers the power to decide threshold questions of arbitrability to the arbitrator." *Reyna v. Int'l Bank of Commerce*, 839 F.3d 373, 378 (5th Cir. 2016). The question is whether the agreement "evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Brittania-U*, 2017 U.S. App. LEXIS 14692 at *8. "If

3

there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Reyna*, 839 F.3d at 378.

The Fifth Circuit has held that "incorporating rules from the American Arbitration Association ("AAA") clearly and unmistakably expressed the parties' intent to leave the question of arbitrability to an arbitrator," because the AAA Rules provided "that '[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Brittania-U*, 2017 U.S. App. LEXIS 14692 at *9 (citing *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)). Moreover, the Fifth Circuit has held that "incorporation of the UNCITRAL Rules clearly and unmistakably delegates arbitrability by granting the arbitrators authority to decide their own jurisdiction." *Id.* at *9-*10.

Here, the CWPDA provided that the parties' dispute "shall be finally resolved by binding arbitration in accordance with the arbitration rules of JAMS/Endispute . . . ," a private ADR provider. Exhibit 3 to Complaint [1-5], at 17. Rule 11(b) of the JAMS Comprehensive Arbitration Rules & Procedures provides:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

*See* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule11 (last visited Sept. 13, 2017). This language is substantially similar to the language from the AAA

Rules the Fifth Circuit has previously held indicate parties' intent to delegate arbitrability to the arbitrator. *See Petrofac*, 687 F.3d at 675. It is also substantially similar to contract language the Fifth Circuit has held constituted an enforceable delegation clause. *See Kubala*, 830 F.3d at 204. Therefore, the Court concludes that the parties clearly and unmistakably agreed to delegate all questions of arbitrability and/or the scope of the arbitration agreement to the arbitrator.

### III. CONCLUSION

Having concluded that the parties executed a valid and enforceable arbitration agreement which contained a valid and enforceable delegation clause, the Court **grants** Defendant's Motion to Compel Arbitration [10]. The Court orders the parties to submit this case to arbitration pursuant to the terms contained in the CWPDA. This case is **dismissed without prejudice**. *See Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015) (dismissal appropriate where all issues must be submitted to the arbitrator).

SO ORDERED AND ADJUDGED this 13th day of September, 2017.

                                           /s / Keith Starrett
                                      KEITH STARRETT
                                      UNITED STATES DISTRICT JUDGE