# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 17-60631

———————

United States Court of Appeals
Fifth Circuit

**FILED**

August 13, 2018

Lyle W. Cayce
Clerk

RICHLAND EQUIPMENT COMPANY, INCORPORATED, a Mississippi
Corporation,

      Plaintiff - Appellant

v.

DEERE & COMPANY, a Delaware Corporation,

      Defendant - Appellee



———————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 5:17-CV-88

———————

Before DENNIS, CLEMENT, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

      The issue on appeal is whether arbitration must be compelled when one contract providing for arbitration of "any dispute" between the parties and containing a valid delegation clause is terminated and claims thereunder are subsequently removed from a complaint but claims under related contracts are preserved. The district court held that it must and we AFFIRM.

———————

     \* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-60631

## FACTS AND PROCEEDINGS

Richland Equipment Company, Inc. ("Richland") and Deere & Company ("Deere") began their business relationship when the parties entered into two agreements in 1986: the John Deere Agricultural Dealer Agreement ("Ag DA") and the John Deere Consumer Products Dealer Agreement ("CP DA"). In 2001, the parties entered into a third agreement, the Commercial Worksite Products Dealer Agreement ("CWP DA"). The CWP DA includes the following arbitration clause:

> Although Dealer and John Deere are entering into this Agreement in a spirit of cooperation and mutual respect, it is possible that disputes may arise. Dealer, Affiliates . . . , Deere & Company and its affiliates agree that any dispute shall be finally resolved by binding arbitration pursuant to the terms set forth in Schedule 4.

Schedule 4 supplements the arbitration clause, providing that if the parties "to a dispute" disagree, "the dispute shall be finally resolved by binding arbitration in accordance with the arbitration rules of JAMS/Endispute." JAMS provides that:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation[,] or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Rule 11(b), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11.

The CWP DA cancellation provision states, in relevant part, that: "The Company may cancel the Dealer's appointment at any time after the happening of . . . [a] [t]ermination (or notice of termination) of *any* John Deere

No. 17-60631

Dealer Agreement that the dealer . . . has with the Company." As discussed, the only other contracts are the AG DA and the CP DA. Neither of those agreements contains an arbitration clause.

The parties have had ongoing disputes since the late 1990s. Deere sent a termination notice to Richland in 2011 because Richland allegedly stopped promoting Deere products. Richland filed suit, but the parties settled. As part of the settlement, Richland agreed to reach certain market share percentages for the following three years. Because Richland apparently never met any of these goals Deere sent a six-month notice that it had "elected to terminate [Richland's] John Deere Agricultural Dealer Agreement, as well as *any other agreements* that may exist between Richland Equipment Co., Inc. and Deere & Company." In response to the termination notice, Richland claimed that "John Deere has elected to provide 'certain dealers' with better pricing . . . in violation of the *Robinson-Patman Act*."

Richland filed the underlying lawsuit to enjoin Deere from terminating all three dealer agreements. Deere moved to compel arbitration based on the CWP DA's arbitration clause. In response, Richland contended that it had "consented to the termination" of the CWP DA. Richland filed an amended complaint removing claims related to the CWP DA, and it asserted that the motion to compel should be denied because the contract containing the arbitration clause was no longer at issue.

The district court rejected Richland's attempt to avoid arbitration. It found that the arbitration clause survived the termination of the underlying agreement. Accordingly, the district court granted the motion to compel arbitration and dismissed the lawsuit without prejudice.

Richland timely appealed.

3

No. 17-60631

## STANDARD OF REVIEW

This court reviews the grant or denial of a motion to compel arbitration de novo. *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

## DISCUSSION

Richland contends that it cannot be compelled to arbitrate its claims because it did not agree to arbitration under the AG DA and the CP DA.[1] It relies on *Torrence v. Murphy* for the proposition that "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." 815 F. Supp. 965, 971 (S.D. Miss. 1993). True enough. But, under the CWP DA, Richland did agree to arbitration of the present dispute.

The two-step framework for analyzing enforcement of arbitration agreements is well established: (1) "whether the parties entered into *any arbitration agreement at all*," and (2) "whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). And where an arbitration agreement includes a delegation clause, the inquiry in step two is "limited." *Id.* at 203.

The "first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). It is undisputed that the CWP DA contained a valid arbitration agreement between the parties, binding them to arbitrate some set of claims.

Further, the termination of an agreement containing an arbitration clause does not automatically extinguish the parties' duty to arbitrate

---

[1] Richland also raises a new argument based on *Douglas v. Regions Bank*, 757 F.3d 460 (5th Cir. 2014). This argument was raised in the district court only after that court's ruling on Deere's motion to compel arbitration. Thus it is waived on appeal. *Rosedale Missionary Baptist Church v. New Orleans City*, 641 F.3d 86, 89 (5th Cir. 2011) (Preserving an argument on appeal requires that the argument "be raised to such a degree that the district court has an opportunity to rule on it." (internal quotation marks omitted)).

4

No. 17-60631

disputes. *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 251 (1977); *see also Rive v. Briggs of Cancun, Inc.*, 82 F. App'x 359, 363 (5th Cir. 2003). To hold otherwise, the Supreme Court explained, would create disorder and unpredictability. *See Nolde*, 430 U.S. at 250–51. The converse "would preclude the entry of a post-contract arbitration order even when the dispute arose during the life of the contract but arbitration proceedings had not begun before termination." *Id.* at 251. Similarly, an arbitration clause would be unenforceable "if arbitration processes began[,] but were not completed, during the contract's term." *Id.* The Supreme Court contemplated this precise situation—where a contract requiring arbitration terminates *after* a dispute arises. As in *Nolde*, there is no evidence that the parties here intended for disputes to be resolved in arbitration before termination of the CWP DA and in court afterward. Thus the court finds the parties are subject to a valid and enforceable arbitration agreement.

Next the court must address whether the parties' intended to arbitrate arbitrability. In order to do this, "the court must determine whether the agreement contains a valid delegation clause." *IQ Prods. Co.*, 871 F.3d at 348. "[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. The court "will not assume that the parties agreed to arbitrate arbitrability unless the parties clearly and unmistakably provide otherwise." *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (internal quotations and alterations omitted). Parties' express incorporation of rules from specific arbitration services in their arbitration agreement delegates arbitrability. *See, e.g., id.* (incorporating the American Arbitration Association rules); *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*,

No. 17-60631

866 F.3d 709, 714 (5th Cir. 2017) (incorporating the United Nations Commission on International Trade Law rules).

The arbitration clause includes such a delegation. The CWP DA provided that the parties' dispute "shall be finally resolved by binding arbitration in accordance with the arbitration rules of JAMS/Endispute." If the court determines that "there is a delegation clause, the motion to compel should be granted in almost all cases." *Kubala*, 830 F.3d at 202.

*Kubala* explains that where there is a delegation clause, the court must only consider whether the parties intended for "the arbitrator [to] decide whether a given claim must be arbitrated." *Id.* Unlike some language which courts have characterized as narrow, the "any dispute" language in the CWP DA is not qualified or limited. *Cf. Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir. 1998) (suggesting a narrow construction of a clause providing for arbitration of "disputes *arising out of* [a particular] contract" (emphasis added) (quotation omitted)); *Coffman v. Provost * Umphrey Law Firm, L.L.P.,* 161 F. Supp. 2d 720, 725 (E.D. Tex. 2001) (narrowly construing a clause providing for arbitration of "any dispute *arising under*" a particular agreement (emphasis added)), *aff'd*, 33 F. App'x 705 (5th Cir. 2002). The unqualified "any dispute" language in the CWP DA confirms that the delegation of arbitrability was intended to apply to *all* disputes between the parties. The district court aptly reasoned that "the phrase 'any dispute' should be interpreted broadly because 'disputes' arising under the CWP DA could involve disputes under any previous dealer agreements because the contract contains a 'cross-termination' provision."

In sum, the parties' express intent to enter into an arbitration clause, the terms of the arbitration clause, including its delegation and "any dispute" provisions, and the cross-termination clause all support the conclusion that the district court did not err in granting Deere's motion to compel arbitration.

No. 17-60631

## CONCLUSION

For the foregoing reasons the judgment of the district court is
AFFIRMED.